UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61512-Civ-SCOLA

MARIA ORTIZ and
CARLOS ORTIZ

    Plaintiffs,
vs.

HOME DEPOT USA, INC.

    Defendant.
_____/

### Order denying Defendant's motion in limine

    Defendant Home Depot USA, Inc. has filed a motion in limine asking the Court to strike Plaintiffs' claim for loss of future wages and to exclude her vocational-rehabilitation expert, Michael Morgenstern, from testifying under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Home Depot argues that Plaintiffs have not provided any evidence that would allow a reasonable juror to calculate Plaintiff Maria Ortiz's future-wage losses. With respect to the expert Morgenstern, Home Depot makes a similar argument: that Morgenstern has insufficient data to calculate Maria's future-wage losses. Because there is evidence supporting Maria's future-wage-loss claim the Court **denies** Home Depot's Motion (DE 33).

    A motion *in limine* is made before a trial has begun for the purpose of excluding or including certain evidence. 20 Am. Jur. *Trials* 441 § 2 (1973). *In limine* rulings are not binding on a trial court and remain subject to reconsideration during course of trial. *Stewart v. Hooters of America, Inc.*, 04-40-T-17, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial. *Id.* Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *Id.*

    Home Depot's argument about Maria's future-wage-loss claim must be evaluated in light of the substantive law on such claims. For a plaintiff to recover damages for loss of future earning capacity, the plaintiff "must establish only that the future economic damages are reasonably certain to occur. While proving a

permanent injury can be an important factor in establishing that such damages are reasonably certain to occur, it is not an absolute prerequisite." *Auto-Owners Insurance Co. v. Tompkins*, 651 So.2d 89, 90 (Fla. 1995). Lost-earning capacity "compensates a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings. A plaintiff must present evidence which will allow a jury to reasonably calculate lost earning capacity." *Benjamin v. Diel*, 831 So.2d 1227, 1229 (Fla. 4th DCA 2002) (brackets, ellipses, and internal quotation marks omitted).

Home Depot's argument that there is no evidence that would allow a reasonable juror to calculate Maria's future-wage losses is meritless. There is evidence that before the accident, Maria had been earning income as a wardrobe stylist. She testified in her deposition that she had been doing freelance work in this field for several years, and she has provided several years of tax returns showing that she had been earning income as a "fashion design consultant." (DE 35-1 at 16-19; DE 38-1.) She also testified in her deposition that she wanted to work as a wardrobe stylist full time, that she had been laying the necessary foundation to be able to work in this profession full time—for example, she was developing connections in the industry and preparing a book of her work—and that she was close to being able to work in the profession full time until her injury derailed her career. (DE 35-1 at 15-20, 22-23, 89-90.) Evidence besides her own testimony supports this conclusion: Mark Parker—who owns and manages MC$^2$ Modeling Agency, Inc. and who may be called to testify—thought that Maria was an excellent stylist who could have earned in two or three years between $80,000 and $100,00 per year working as a wardrobe stylist had it not been for her injury. (DE 22-1 at 2; DE 37-1 at 20, 24.) Morgenstern, the vocational-rehabilitation expert, used www.payscale.com (a website for an entity that does surveys of salaries on different jobs) to obtain the median income for people working as wardrobe stylists after 1, 5, 10, 15, and 20 years. (DE 37-1 at 22-24; DE 22-1 at 2-3.) He then used those figures—which, incidentally, were significantly less than Parker's salary projections—to calculate what Maria would have made as a wardrobe stylist during her expected work life. He then subtracted the income Maria would make in her current job managing a dog kennel over her expected work life to determine her wage loss over her work life. In sum, there is evidence that would allow a reasonable juror to calculate Maria's future-wage loss. This conclusion becomes even stronger when one considers that trial has not even happened yet. Maria may be able to present additional evidence in support of her future-wage-loss claim. She certainly has presented enough evidence at this stage to avoid having her future-wage-loss claim stricken before she even has the opportunity to present evidence in support of this claim to the jury.

This brings the Court to Home Depot's argument that Morgenstern's testimony should be excluded under *Daubert*. This argument is barely developed:

Home Depot has just three sentences of analysis telling the Court why Morgenstern's testimony should be excluded. (DE 33 at 3.) Unsurprisingly, it is not persuasive.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. That Rule provides that a

> witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A trial court determining the admissibility of expert testimony under Rule 702 must engage in a three-part inquiry, considering whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (brackets omitted). "*Daubert* instructs courts to consider the following factors: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

It is not the role of the trial court to make conclusions about the persuasiveness of the expert's opinions, rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld*, 654 F.3d at 1193. (internal quotation marks omitted). "[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Id.* (internal quotation marks omitted).

Home Depot argues that Morgenstern bases "his findings and final calculations simply on [Maria's] assertion that she is engaged in that field [i.e., wardrobe styling], and uses internet research and questionable math to come to

arrive at his ultimate opinion." (DE 33 at 3.) But Home Depot does not explain why Morgenstern's math is questionable or how or why internet research is inappropriate. The math makes sense to the Court, and the internet is a useful tool. Absent analysis or argument, the Court will not credit an unsupported and unexplained assertion that the math is questionable and that his internet research is poor.[1] Home Depot's remaining argument—namely, that Morgenstern's calculations are based only on Maria's assertion that she was working as a wardrobe stylist—is undercut by other evidence in the record—such as her tax returns—suggesting that Maria was earning income as a wardrobe stylist before her injury. Besides, Maria's testifying that she was working as a wardrobe stylist by itself would be evidence that a jury could accept. To be sure, the evidence in the record shows that Maria was working sporadically—not full time—as a wardrobe stylist before her injury. So it does require a leap to go from this *sporadic* work to a projection of future earnings based on her working *full time* as a wardrobe stylist. But this leap is not without evidentiary support: Maria has testified that she intended to and was capable of transitioning to full-time wardrobe-stylist work. So although the leap may be a weak point in Maria's case that detracts from the weight of Morgenstern's conclusion, it does not render his testimony inadmissible. The Court therefore **denies** Home Depot's Motion (DE 33) to exclude Morgenstern's testimony.

The Court reiterates that this pretrial ruling merely allows Maria to put evidence before the factfinder concerning her claim for future loss of earning capacity.

**Done and ordered** in chambers, at Miami, Florida, on October 25, 2013.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

---

[1] During Morgenstern's deposition, Home Depot's counsel says that he thinks that the data from www.payscale.com is valid:
> Q  And then you're basing the report on, you know, obviously other data that you obtained, which –
> A  People –
> Q  Yeah, which I think is valid, payscale, but then your juxtaposing that with her working at a dog kennel . . . .

(DE 37-1 at 46.)